# In the United States Court of Appeals for the Fifth Circuit

BRIAN HUMPHREY, JOEL GIROIR, BRYANT WHITE, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs-Respondents*

v.

JAMES M. LEBLANC, IN HIS OFFICIAL AND UNOFFICIAL CAPACITY AS
SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS;
LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS,
*Defendants-Petitioner*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA (NO. 3:20-CV-00233; NO.
3:21-CV-00108)
(THE HONORABLE JOHN W. DEGRAVELLES)*

## PLAINTIFFS-RESPONDENTS' RESPONSE IN OPPOSITION TO DEFENDANTS' PETITION FOR LEAVE TO APPEAL

*(Counsel listed on inside cover)*

SAMANTHA POURCIAU
THE PROMISE OF JUSTICE INITIATIVE
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
*sbosalavage@defendla.org*

WILLIAM MOST
MOST & ASSOCIATES
201 St. Charles Ave. Ste. 2500
#9685
New Orleans, LA 70170
Tel: (504) 509-5023
*williammost@gmail.com*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| Parties | Counsel and Law Firms |
|---|---|
| PLAINTIFFS-RESPONDENTS<br>Brian Humphrey, Joel Giroir, Bryant White | PROMISE OF JUSTICE INITIATIVE<br>Samantha Pourciau<br>Kara Crutcher<br>Michael Allen<br><br>MOST & ASSOCIATES<br>William Most<br>Caroline Gabriel<br><br>LOEVY & LOEVY<br>Maria Makar<br>Brian Morris |
| DEFENDANTS-PETITIONERS<br>James LeBlanc, Secretary, Department of Public Safety and Corrections; Louisiana Department of Public Safety and Corrections;<br><br>AND<br>Gary Wescott, Secretary, Department of Public Safety and Corrections | KEOGH, COX & WILSON, LTD.<br>Andrew Blanchfield<br>Chelsea A. Payne<br><br>ATTORNEY GENERAL OF LOUISIANA<br>Elizabeth B. Murrill<br>J. Benjamin Aguiñaga |

/s/ *William Most*
WILLIAM MOST
*Attorney of Record for Respondents*

OCTOBER 16, 2025.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................v

INTRODUCTION............................................................................................1

BACKGROUND ..............................................................................................2

STANDARD OF REVIEW...............................................................................3

ARGUMENT ...................................................................................................4

    I.    Defendants' Petition Does Not Meet Rule 23(f) ..........................4

        A.    The Court Should Reject Defendant's Qualified
                Immunity Argument...........................................................4

        B.    The Class Does Not Impose Undue Settlement
                Pressure ...........................................................................12

    II.    Defendant's Remaining Arguments Do Not Provide
        Grounds for Granting the Petition...........................................16

        A.    An Analysis of Sovereign Immunity Is Improper
                Under Rule 23(f) Review .................................................16

        B.    Giroir's Class Claims Satisfy the Inherently
                Transitory Exception to Mootness .................................17

    III.    The District Court Did Not Abuse Its Discretion in
        Finding That Plaintiff's Classes as Certified Satisfy
        Rule 23 ......................................................................................19

        A.    *Giroir* is an Adequate Representative for
                His Class..........................................................................20

        B.    An Injunction in *Giroir* Can Provide Class-Wide
                Relief................................................................................21

C.   The District Court did not Err in Finding
     *Humphrey* Satisfies Predominance and
     Superiority..................................................................21

D.   Plaintiffs Presented Sufficient Evidence of
     Commonality and Typicality Within the Classes............23

CONCLUSION ..................................................................................24

CERTIFICATE OF SERVICE.........................................................25

CERTIFICATE OF COMPLIANCE.................................................26

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Allison v. Citgo Petroleum Corp.,*
151 F.3d 402 (5th Cir. 1998) ...................................................... 4, 19

*Angell v. GEICO Advantage Ins. Co.,*
67 F.4th 727 (5th Cir. 2023) ........................................................... 22

*Bell v. Ascendant Solutions, Inc.,*
422 F.3d 307 (5th Cir. 2005) ...................................................... 4, 16

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*
242 F.3d 290 (5th Cir. 2001) ............................................................ 16

*Bogard v. Cook,*
586 F.2d 399 (5th Cir. 1978) ............................................................. 8

*Brown v. Am. Honda,*
522 F.3d 6 (1st Cir. 2008) ................................................................. 6

*Buchicchio v. LeBlanc,*
No. 23-30116, 2024 WL 4603272
(5th Cir. Oct. 29, 2024) ...................................................... 2, 10, 11, 18

*Butler v. Suffolk Cnty.,*
289 F.R.D. 80 (E.D.N.Y. 2013) ......................................................... 9

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ............................................................. 12

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ........................................................... 14

*County of Riverside v. McLaughlin,*
500 U.S. 44 (1991) .......................................................................... 17

*Crittindon v. LeBlanc,*
37 F.4th 177 (5th Cir. 2022)........................................................ 10, 11, 18

*Def. Distributed v. Grewal,*
971 F.3d 485 (5th Cir. 2020) ................................................................20

*Earl v. Boeing Co.,*
53 F.4th 897 (5th Cir. 2022) ................................................................16

*Gene & Gene, L.L.C. v. BioPay, LLC,*
624 F.3d 698 (5th Cir.2010) ...................................................................4

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ...............................................................................17

*Giroir v. LeBlanc,*
No. 3:21-cv-108 (M.D. La. Feb. 19, 2019)........................................ *passim*

*Heidi Grp., Inc. v. Tex. HHS Comm'n,* 1
38 F.4th 920 (5th Cir. 2025).....................................................................7

*Hicks v. LeBlanc,*
81 F.4th 497 (5th Cir. 2023)..............................................................2, 18

*Hill v. Cnty. of Montgomery,*
No. 9:14-cv-00933, 2018 WL 3979590
(N.D.N.Y. Aug. 20, 2018)........................................................................9

*Hoggard v. Rhodes,*
141 S. Ct. 2421 (2021) .............................................................................7

*Horne v. Flores,*
557 U.S. 433 (2009) ...............................................................................13

*Howard v. Pollard,*
814 F.3d 476 (7th Cir. 2015) ................................................................14

*Hughes v. Garcia,*
100 F.4th 611 (5th Cir. 2024) ...................................................................... 7

*Humphrey v. LeBlanc,*
No. 3:20-cv-233 (M.D. La. Sep. 22, 2025) ........................................ *passim*

*In re Alpena Cnty.,*
Nos. 20-110/111, 2022 U.S. App. LEXIS 8459
(6th Cir. Mar. 30, 2022) .............................................................................. 6

*In re Kensu,*
No. 20-0105, 2020 U.S. App. LEXIS 33850
(6th Cir. Oct. 27, 2020) ............................................................................. 14

*In re Lorazepam & Clorazepate Antitrust Litig.,*
289 F.3d 98 (D.C. Cir. 2002) ............................................................. 14, 15

*Jenkins v. Raymark Indus.,*
782 F.2d 468 (5th Cir. 1986) .................................................................... 19

*Jones v. Diamond,*
594 F.2d 997, (5th Cir. 1979) ..................................................................... 8

*Lewis v. Casey,*
518 U.S. 343 (1996) ................................................................................... 14

*McMurry v. Weaver,*
142 F.4th 292 (5th Cir. 2025) ..................................................................... 7

*McNeal v. LeBlanc,*
90 F.4th 425 (5th Cir. 2024) ........................................................ 10, 11, 18

*Microsoft Corp. v. Baker,*
582 U.S. 23 (2017) ....................................................................................... 3

*Parker v. LeBlanc,*
73 F.4th 400 (5th Cir. 2023) ........................................................ 10, 11, 18

*Prado-Steiman v. Bush,*
221 F.3d 1266 (11th Cir. 2000) ....................................................5

*Regents of Univ. of Cal. v. Credit Suisse First Boston (USA),*
482 F.3d 372 (5th Cir. 2007) ................................... 4, 5, 12, 15

*Reitz v. Woods,*
85 F.4th 780 (5th Cir. 2023)......................................................7

*Ross v. Gossett,*
No. 15-cv-309, 2020 WL 1472072
(N.D. Ill. Mar. 26, 2020) ...........................................................9

*Smith v. Montgomery Cnty, Md.,*
573 F. Supp. 604 (D. Md. 1983)...............................................9

*Snead v. CoreCivic of Tenn., LLC,*
No. 3:17-cv-0949, 2018 WL 3157283
(M.D. Tenn. June 27, 2018).......................................................9

*Unger v. Amedisys Inc.,*
401 F.3d 316 (5th Cir. 2005) .................................................12

*Valentine v. Collier,*
No. 20-1115, 2020 WL 3491999
(S.D. Tex. June 27, 2020) ........................................................21

*Villarreal v. City of Laredo,*
44 F.4th 363 (5th Cir. 2022).....................................................7

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ................................................................23

*Ward v. Hellerstdet,*
753 F. App'x 236 (5th Cir. 2018) ...........................................17

*Yates v. Collier,*
868 F.3d 354 (5th Cir. 2017) ..................................................21

*Young v. Cnty. of Cook*,
No. 1:06-cv-0552, 2007 WL 1238920
(N.D. Ill. Apr. 25, 2007) ...................................................................9

*Zeidman v. J. Ray McDermott & Co., Inc.*,
651 F.2d 1030 (5th Cir. 1980) ........................................................ 19

## Rules

Fed. R. Civ. P. 23(a) ......................................................................... 19

Fed. R. Civ. P. 23(b) ............................................................... 9, 20, 21

Fed. R. Civ. P. 23(f) ................................................................. *passim*

Fed. R. Civ. P. 65 ............................................................................. 13

## Other Authorities

Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1781 (4th ed. 2023) .......................... 22

*McNeal v. LeBlanc*,
Oral Arg. Audio at 23:02–23:07
No. 22-30180 (5th Cir. Sept. 6, 2023), ........................................................ 3

## INTRODUCTION

Defendants' practice of failing to timely release people from custody of the Louisiana Department of Public Safety & Corrections (DPSC) is well known and documented. As such, the district court properly certified these consolidated cases as class actions to determine whether Defendants' practice violates their rights. In their petition, Defendants invent a new legal theory in an attempt to create an "unsettled question of law" about whether certification is proper in cases involving qualified immunity, even though they have not yet raised qualified immunity before the district court. They also make vague, unsupported allegations about class certification creating settlement pressure. Defendants attempt to use these haphazard arguments to show that this Court should take the rare step of permitting an interlocutory appeal. This Court should reject Defendant's arguments because (1) no court has found that constitutional claims like these are categorically excluded from class certification; (2) Defendant has not moved for dismissal on qualified immunity; and (3) Defendants' arguments do not track this Court's caselaw. The petition should be denied.

**BACKGROUND**

This Court noted that in recent years, it has been "seeing with some frequency claims of 'overdetention,' now a euphemism for prisoners illegally incarcerated beyond the terms of their sentence." *Hicks v. LeBlanc*, 81 F.4th 497, 500 (5th Cir. 2023). In summing up the situation, the Court wrote that the "problem is endemic in Louisiana, where the process for calculating release dates is so flawed (to put it kindly) that roughly one in four inmates released will have been locked up past their release dates—for a collective total of 3,000-plus years." *Id.* at 510.

That assessment is corroborated by a United States Department of Justice investigation spanning two presidential administrations, which concluded in a report attesting to "multiple policy failures resulting in overdetention at DPSC," including the failure to adopt appropriate policies and time-computation processes. *Buchicchio v. LeBlanc*, No. 23-30116, 2024 WL 4603272, at *4 (5th Cir. Oct. 29, 2024) (*per curiam*, unpub.) The report described the unconstitutional overdetentions as "severe, systemic, and are both caused and perpetuated by serious ongoing deficiencies in [DPSC]'s policies and practices." *Id.*

So systemic are these failures that during oral argument in an individual overdetention case, Fifth Circuit Judge Edith Jones wondered aloud: "Well, let me ask: why didn't someone file a class action?". Oral Arg. Audio at 23:02–23:07, *McNeal v. LeBlanc*, No. 22-30180 (5th Cir. Sept. 6, 2023), https://www.ca5.uscourts.gov/OralArgRecordings/22/22-30180_9-6-2023.mp3.

Plaintiffs did. In 2020 and 2021, they filed twin putative class actions–*Giroir v. LeBlanc* for injunctive relief, and *Humphrey v. LeBlanc* for damages.

On September 22, 2025, the trial court issued an order granting class certification in both cases but severing claims for emotional distress and mental anguish from class treatment. *See* Pet. Appx.

## STANDARD OF REVIEW

A permissive appeal under Rule 23(f) is the exception, not the rule. That's why "routine class certification decisions [are] unworthy of immediate appeal." *Microsoft Corp. v. Baker*, 582 U.S. 23, 32 (2017) (explaining why the drafters of Rule 23(f) rejected an appeal of right). The Supreme Court has recognized two situations where interlocutory appeal may be appropriate: (1) the class certification decision is

practically dispositive of the litigation, or (2) the decision turns on a novel or unsettled legal issue. *Id* (citing Fed. R. Civ. P. 23(f) Committee Note).

FRCP 23(f) permits a party to "appeal only the issue of class certification; no other issues may be raised." *Bell v. Ascendant Solutions, Inc.,* 422 F.3d 307, 314 (5th Cir. 2005) (cleaned up). While Rule 23(f) provides discretion to permit the appeal of the grant of class certification, the district court maintains substantial discretion in determining whether to certify a class action, and that decision is only reviewed for an abuse of discretion. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998); *see also Gene & Gene, L.L.C. v. BioPay, LLC,* 624 F.3d 698, 703 (5th Cir.2010) (finding the district court abused its discretion in re-opening discovery and allowing the parties to re-litigate class certification after this Court reversed an order granting).

## ARGUMENT

### I. Defendants' Petition Does Not Meet Rule 23(f).

#### A. The Court Should Reject Defendant's Qualified Immunity Argument.

It is only appropriate to grant leave to appeal a class certification determination in narrow circumstances, such as when the "certification decision turns on a novel or unsettled question of law." *Regents of Univ.*

*of Cal. v. Credit Suisse First Boston (USA)*, 482 F.3d 372, 379–80 (5th Cir. 2007) (citing Fed. R. Civ. P. 23(f) advisory committee note. That does not mean, however, that a party can assure itself of an interlocutory appeal just because it can invent some new legal theory. As the Eleventh Circuit explained:

> [G]iven the highly particularized nature of class action determinations, and the lack of case law applying Rule 23 in many contexts, we imagine it relatively easy for a litigant to identify some question of law implicated by the class certification decision and in good faith characterize that question as novel or unsettled. To justify immediate and interlocutory appellate review, something more is necessary--something that creates a compelling need for resolution of the legal issue sooner rather than later.

*Prado-Steiman v. Bush*, 221 F.3d 1266, 1274 (11th Cir. 2000).

Courts have expressed concern that allowing interlocutory review solely on this basis would have the effect of "encouraging a flood of Rule 23(f) petitions." *Id.* As a result, courts have granted interlocutory appeals for novel questions when the petitioner can identify a novel question of law <u>and</u> show that they have a likelihood of prevailing on that question based on existing law. This balance makes sense. If a petitioner can dream up some new legal theory that may technically be "novel"—in the

sense that no one has used it before—it could be novel for a good reason: it has no basis in existing law and is doomed to fail.

For example, in *In re Alpena County*, the Sixth Circuit granted an interlocutory appeal of a class certification doctrine because the petitioner had asserted a "likelihood of success on this issue" <u>and</u> that assertion had a basis in existing law: the court had "recognized the parameters of the [judicial link] doctrine, but never held that the doctrine applied in a circumstance like the one here." *In re Alpena Cnty.*, Nos. 20-110/111, 2022 U.S. App. LEXIS 8459 at \*4, 6 (6th Cir. Mar. 30, 2022) (order). Or alternatively, courts will grant interlocutory review when plaintiffs' theory of the case rests on a "novel theory of legally cognizable injury." *Brown v. Am. Honda*, 522 F.3d 6, 25 (1st Cir. 2008).

But here, Secretary LeBlanc asks this court to "grant review here to definitively answer that assertion of qualified immunity frustrates class resolution." Petitioner's Brief at 10. That is to say, he asks this Court to adopt a new categorical rule that constitutional claims for damages against individuals cannot <u>ever</u> be brought as a class action. *See also* Petitioner's Brief at 11 ("The Court should take this opportunity to

hold that a (b)(3) class is unavailable when qualified immunity is raised.").

This may be a novel question—but it is not one Secretary LeBlanc has shown he has a likelihood of success on. He does not point to any court—whether a trial court or appellate court anywhere in the nation—that has ever held anything like his hypothesis.

Instead, he points to dicta in two opinions of this Court from nearly a half century ago.[1] A footnote in one of those opinions mused that in the

---

[1] This Court's treatment of qualified immunity has evolved substantially over the last half-century. In particular, Justices of the Supreme Court and judges of this Court have questioned whether and how qualified immunity should be applied in non-split-second scenarios. *See Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas. J., respecting denial of certiorari) ("officers[] who have time to make calculated choices about enacting or enforcing unconstitutional polices" should not "receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting."); *Heidi Grp., Inc. v. Tex. HHS Comm'n*, 138 F.4th 920, 933 (5th Cir. 2025) ("Dacus's eleven-month-long secret investigation into Heidi does not resemble the areas in which qualified immunity is most justifiable.") (citing *Hughes v. Garcia*, 100 F.4th 611, 620 n.1 (5th Cir. 2024) (explaining that the core areas of qualified immunity "involve excessive force, or split-second decisions, or the chaos of a chase")); *McMurry v. Weaver,* 142 F.4th 292, 306 (5th Cir. 2025) (Ho, J., concurring) ("It's one thing to grant qualified immunity when it comes to police officers who are forced to make split-second judgment calls in life-and-death situations. It's quite another thing to immunize public officials who make a deliberate and calculated decision to violate one's constitutional rights"); *Reitz v. Woods*, 85 F.4th 780, 793 (5th Cir. 2023) (denying qualified immunity when officers violated the Constitution in an "unhurried setting"); *Villarreal v. City of Laredo*, 44 F.4th 363, 371 (5th Cir. 2022) ("[t]here is a big difference between 'split-second decisions' by police officers and 'premeditated plans to arrest a person'"), *reh'g granted*, 52 F.4th 265 (5th Cir. 2022), *vacated and remanded*, 145 S. Ct. 368 (2024), *on remand*, 134 F.4th 273, 277 (5th Cir. 2025) (Oldham, J., concurring) ("When an officer has the time to make

7

context of <u>excessive force claims</u>, class treatment might be "difficult" (but not impossible) because "the trial court would also have to analyze the facts surrounding each particular incident of violence in order to properly evaluate the qualified good faith immunity defenses." Petitioner's Brief at 9 (citing *Jones v. Diamond*, 594 F.2d 997, 1022 n.24 (5th Cir. 1979), *on reh'g en banc*, 636 F.2d 1264 (5th Cir. 1981)). And Secretary LeBlanc misstates the language from the other case. *Bogard* did not suggest that "separate mini-trials" would be required because of qualified immunity. *See id.* It said that "[c]laims for individual damage relief . . . would have required separate mini-trials for each prisoner," and then separately noted that qualified immunity would also be an issue. *Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir. 1978).

In any event, neither of those cases suggested that the assertion of qualified immunity categorically frustrates class resolution. There is therefore no indication that this is a serious question that Secretary LeBlanc is likely to prevail on. Even a brief look at actual practice suggests that LeBlanc is wrong, given that courts across the country

---

such plans, to consult counsel, and to investigate all the facts, it is unclear whether and to what extent qualified immunity should apply.").

routinely certify class actions challenging prison policies under Rule 23(b)(3).[2] In other words, the concerns that *Borgard* and *Diamond* raised have been routinely resolved by courts in the ensuing decades.

Furthermore, even if individual issues of qualified immunity could frustrate class treatment in some contexts, that would not apply to this context. We know that because this Court has repeatedly addressed Secretary LeBlanc's invocation of qualified immunity in similar cases. And in most instances, this Court has looked to LeBlanc's knowledge of the <u>pattern</u> of overdetention in granting or denying him qualified immunity, rather than parsing each individual's facts.

---

[2] *See, e.g.*, *Ross v. Gossett*, No. 15-cv-309, 2020 WL 1472072, at *6 (N.D. Ill. Mar. 26, 2020) (certifying a Rule 23(b)(3) class about prison shakedowns despite the fact that "the class members' particular experiences may vary to some degree"); *Hill v. Cnty. of Montgomery*, No. 9:14-cv-00933, 2018 WL 3979590, at *14 (N.D.N.Y. Aug. 20, 2018) (certifying a Rule 23(b)(3) class about a prison's failure to provide adequate nutrition to inmates despite individualized concerns about "the different reaction that each inmate had to the diet at the jail" or whether inmates lost weight "for different reasons" like "stress, medical conditions, drug use, etc."); *Snead v. CoreCivic of Tenn., LLC*, No. 3:17-cv-0949, 2018 WL 3157283, at *20 (M.D. Tenn. June 27, 2018) (certifying a Rule 23(b)(3) class about how a prison responded to a scabies outbreak despite concerns about individualized medical care and damages); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 102-03 (E.D.N.Y. 2013) (certifying a Rule 23(b)(3) class about unsanitary conditions in a prison that included over fifty complaints, ranging from black mold to sewage back-ups); *Young v. Cnty. of Cook*, No. 1:06-cv-0552, 2007 WL 1238920, at *7 (N.D. Ill. Apr. 25, 2007) (certifying a Rule 23(b)(3) class about a jail's strip search policy despite the fact that individualized searches "may have differed from day to day"); *Smith v. Montgomery Cnty, Md.*, 573 F. Supp. 604, 613 (D. Md. 1983) (certifying a Rule 23(b)(3) class about a prison's strip search policy despite the need to determine individual damages).

For example, in *Crittindon v. LeBlanc*, this Court held that LeBlanc's knowledge of a pattern of a pattern of "on average, a month-long delay in receiving paperwork from the local jails" and similar facts was enough to deny qualified immunity at the summary judgment phase. 37 F.4th 177, 188 (5th Cir. 2022). In *Parker v. LeBlanc,* this Court held that allegations of LeBlanc's awareness "regarding the regular pattern of over-detentions" was sufficient to defeat qualified immunity. 73 F.4th 400, 408 (5th Cir. 2023). In *McNeal v. LeBlanc,* this Court held that "the overdetained prisoner alleged a pattern of similar violations at the DPSC sufficient to deny LeBlanc qualified immunity at the motion to dismiss stage." 90 F.4th 425, 431 (5th Cir. 2024). And in *Buchicchio v. LeBlanc,* this Court again looked to LeBlanc's knowledge of the pattern of overdetention to deny qualified immunity. No. 23-30116, 2024 WL 4603272, at *4 (5th Cir. Oct. 29, 2024) (unpublished, per curiam).

Thus, this Court has consistently held that LeBlanc's qualified immunity is to be analyzed by looking at his knowledge of the broad pattern of inmates being held past the expiration of their court-ordered sentences. So while it is technically true that the parties would need to confirm that class members fit within that pattern, that ministerial task

does not take a "mini-trial." Instead, it takes "about five minutes per person" according to witness testimony. Pet. Appx. 50.

Finally, Secretary LeBlanc complains that without interlocutory appellate review, the question of his "qualified immunity will continue unheeded—critically during discovery." Petitioner's Brief at 10. But LeBlanc has not raised qualified immunity and had it go unheeded—he has <u>not raised it by motion at all</u>. Instead of invoking qualified immunity in a motion to dismiss, he filed an answer. *Humphrey v. LeBlanc,* No. 3:20-cv-233 (M.D. La. Sep. 22, 2025), ECF No. 17. And he has declined to file any motion for judgment on the pleadings or summary judgment invoking the defense. (That is likely because *Crittindon, Parker, McNeal,* and *Buchicchio* strongly suggest that he is not entitled to qualified immunity in this suit.) Secretary LeBlanc can hardly fault the trial court for not "heeding" a defense that LeBlanc has declined to put before the court. In fact, granting this interlocutory appeal would substantially *delay* assessment of qualified immunity—which would necessarily come later in this case given that LeBlanc has not yet moved for it.

The petition should be denied.

**B.    The Class Does Not Impose Undue Settlement Pressure.**

It is appropriate to grant leave to appeal an adverse determination where "[a]n order granting certification . . . may force a defendant to settle rather than incur the cost of defending a class action and run the risk of potentially ruinous liability." *Regents,* 482 F.3d at 379 (citing Fed. R. Civ. P. 23(f) advisory committee note).

This Court has made clear that there are instances where class certification *can* create undue pressure to settle—particularly in securities cases or when litigating an immature tort. *See id.* (finding that where plaintiffs seek to hold the banks liable for nearly the entirety of securities losses stemming from the Enron collapse, settlement pressure appears to be particularly acute); *Unger v. Amedisys Inc.,* 401 F.3d 316, 319 (5th Cir. 2005) (vacating class certification in a securities case due to the district court's failure to apply the appropriate standard to plaintiff's "fraud-on-the-market allegations"); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996) (finding class "certification of an immature tort results in a higher than normal risk that the class action may not be superior to individual adjudication"). This is far from a securities case, and overdetention is certainly not an immature tort.

Defendants argue their petition should also be granted because certification "may force" them "to settle rather than . . . run the risk of potentially ruinous liability." Petitioner's Brief at 8. Beyond this cursory assertion simply quoting FRCP 23 committee notes, Defendants fail to make any allegations or cite any case that supports review of the district court's decision.

First, Defendants have not alleged settlement pressure or "ruinous liability" that warrants review of the district court's decision. Instead, they start by vaguely referring to "sensitive federalism concerns," citing a case where the Supreme Court reviewed the Ninth Circuit's analysis of FRCP 65. Petitioner's Brief at 12 (citing *Horne v. Flores*, 557 U.S. 433, 448 (2009)). But unlike *Horne*, where petitioners sought relief from judgement, the parties here have yet to reach trial. This case in no way supports Defendants' position that class certification creates undue pressure to settle the case.

Next, Defendants try to jump to the underlying merits of the case, claiming that the injunction Plaintiffs seek (which hasn't been entered, and is not on review) threatens "judicial capture of the State's release process" and that it will strip "the State of control over prison

13

administration." Petitioner's Brief at 12–13. (referring to *Lewis v. Casey*, 518 U.S. 343, 362–63 (1996)). Unlike *Lewis*—where the petitioner sought review of a Ninth Circuit judgement upholding an injunction against the Arizona Department of Corrections—this case is at a completely different posture—and it doesn't concern an injunction that "furthers social policy goals." *Lewis,* 518 U.S. at 388. Rather, it concerns the DPSC's practice of detaining people beyond their court ordered release dates.

Defendants make general assertions of harm, but that's far from enough to justify a permissive interlocutory appeal. That's why other circuits refuse to grant 23(f) petitions when a party vaguely alleges that certification creates settlement pressure, which, of course, would be true in every case. *See, e.g.*, *In re Kensu*, No. 20-0105, 2020 U.S. App. LEXIS 33850, at *3 (6th Cir. Oct. 27, 2020) (finding the petitioner did not provide "insight into potential expenses and liabilities.") (order); *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (denying a 23(f) petition because they fail to establish that class certification signals the death knell of their actions); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 960–61 (9th Cir. 2005) (denying a 23(f) petition because petitioner failed to establish a death-knell situation); *In re Lorazepam & Clorazepate*

14

*Antitrust Litig.*, 289 F.3d 98, 108 (D.C. Cir. 2002) (denying a 23(f) petition because petitioner made no showing that class certification sounds the death knell of the litigation).

What's more, Defendants are not seriously interested in settling the case, which cuts even further against granting permission to appeal. The parties have participated in three separate mediations in this matter with Magistrate Judge Scott Johnson, and while Plaintiffs remain open to the prospect of settlement, Defendants last indicated that they are not. *Humphrey v. LeBlanc,* No. 3:20-cv-233 (M.D. La. Sep. 22, 2025), ECF 250 (Joint Brief in Response to status conference). Since the class certification order, Defendants have not reached out about settlement negotiations. While the lack of progress in settlement negotiations "is no reason to decline a rule 23(f) appeal," Defendants unwillingness to participate in the most recent court ordered mediation, alongside their vague and unsupported assertions do not support a grant of an appeal. *See Regents,* 482 F.3d at 379.

**II. Defendant's Remaining Arguments Do Not Provide Grounds for Granting the Petition.**

**A. An Analysis of Sovereign Immunity Is Improper Under Rule 23(f) Review.**

In seeking review of the district court's class certification ruling, a party may "appeal only the issue of class certification; no other issues may be raised." *Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 314 (5th Cir. 2005); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001).

Here, Defendants—for the first time—allege that DPSC is immune from suit. Petitioner's Brief at 13. Even if this were true, a Rule 23(f) petition seeking leave to appeal is the improper posture to raise this argument. Further, Plaintiffs also named former Secretary LeBlanc as a Defendant in both cases: in his individual capacity in *Humphrey*, and in his official capacity in *Giroir*.

While this Court has found some questions of fact to be relevant to Rule 23(f) review, the question of sovereign immunity is not one of them. *Earl v. Boeing Co.*, 53 F.4th 897, 904 (5th Cir. 2022) (reversing class certification due to lack of Article III standing to bring claims).

Defendants improperly raise this argument, and it does not support review of the district court's order.

**B.   Giroir's Class Claims Satisfy the Inherently Transitory Exception to Mootness.**

Defendants are wrong that Giroir's claims do not meet the inherently-transitory exception to pre-certification mootness because they confuse the relevant time period to assess the temporary nature of the claim. The Supreme Court and this Court found claims raised in the prison context to be of a fleeting or temporary nature when the challenged action lasts as few as several days to as long as several months. *See, e.g.*, *County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975); *Ward v. Hellerstdet*, 753 F. App'x 236, 242 (5th Cir. 2018).

There is no reason to believe that any potential plaintiff seeking to represent a class of individuals being overdetained by Defendants for injunctive and declaratory relief would be overdetained for more than a few days after filing suit. Defendants are wrong that an analogous time period to assess the transitory nature of claim is between 41 days and 337 days—the length of time individual plaintiffs were overdetained in

17

the individual overdetention cases that have reached this court—because in all of those cases the individual plaintiffs filed suit <u>after</u> they were released from being overdetained.[3] *Crittindon v. LeBlanc*, 37 F.4th 177, 184-85 (5th Cir. 2022); *Parker v. LeBlanc*, 73 F.4th 400, 403 (5th Cir. 2023); *Hicks v. LeBlanc*, 81 F.4th 497, 501 (5th Cir. 2023); *McNeal v. LeBlanc*, 90 F.4th 425, 429 (5th Cir. 2024); *Buchicchio v. LeBlanc*, No. 23-30116, 2024 WL 4603272, at *3–4 (5th Cir. Oct. 29, 2024). As such, all of those plaintiffs would lack standing to sue for injunctive relief to begin with, let alone have a claim that was so inherently transitory that it was mooted out before class certification could be ruled upon.

The relevant time period to assess the inherently transitory exception starts when a currently overdetained individual files a putative class action suit for injunctive relief and ends when he is released. In Giroir's case, that time period was two days. *Giroir v. LeBlanc*, No. 3:21-cv-108 (M.D. La. Feb. 19, 2019)*,* ECF 1 (complaint filed on February 19, 2021); Pet. Appx. 12 (noting Giroir was released on February 22,

---

[3] Even accepting Defendants' flawed premise, it is not reasonable to expect the district court to resolve a class certification motion between 41 and 337 days. In this case, it took the district court over four years to grant Giroir's motion, during which time Giroir was diligently pursing his motion. ECF 164 at 3 (summarizing the numerous rounds of briefing, supplemental authority, and the class certification hearing).

2021).[4] There is no reason to believe that Defendants would continue detaining any other potential plaintiff for more than a few days after filing suit, which would never allow time for the district court to rule on a class certification motion. This scenario meets the inherently-transitory exception.[5]

### III. The District Court Did Not Abuse Its Discretion in Finding That Plaintiff's Classes as Certified Satisfy Rule 23.

"[T]he district court maintains substantial discretion in determining whether to certify a class action, a decision [the appeals court] review[s] only for abuse." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998) (citing to *Jenkins v. Raymark Indus.*, 782 F.2d 468, 471–72 (5th Cir. 1986)). The district court did not abuse its discretion in finding that Plaintiffs satisfied each of Rule 23(a)'s criteria and concluding that *Humphrey* and *Giroir* satisfied requirements of

---

[4] This two-day release period after filing suit does not suggest that the Department of Public Safety & Corrections is generally diligent in its release practices; instead, it indicates that the Department will often release someone from custody (even though their sentence is complete) only after they obtain counsel and indicate a legal action is forthcoming.

[5] Additionally, Giroir meets the "picking off" exception to mootness. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1051 (5th Cir. 1980) (holding that "a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, there is pending before the district court a timely filed and diligently pursued motion for class certification").

Rules 23(b)(3) and 23(b)(2), respectively. Despite these findings, Defendants challenge the adequacy of *Giroir* as a plaintiff and argue that no injunction in *Giroir* can provide class wide relief. Defendants also renew disputes over predominance and superiority for *Humphrey,* and finally, reassert concerns of commonality and typicality for both classes. None of these arguments necessitate granting the instant petition because they have either been waived, or the district court did not abuse its discretion in finding for Plaintiffs.

## A. *Giroir* is an Adequate Representative for His Class.

In their Rule 23(f) Petition, Defendants again raise issues for the first time, arguing Giroir is an inadequate class representative for the injunctive case because (1) there have been changes in the four years since his overdetention, and (2) changes referred to in *Humphrey* undermine claims of deliberate indifference in *Giroir*. Petitioner's Brief at 18. But Defendants forfeited these arguments when they did not make them in the district court. *See* Pet. Appx. 75–76 (summarizing Defendants adequacy arguments with no mention of length of time since Giroir's overdetention or a potential conflict with the *Humphrey*); *see also Def. Distributed v. Grewal*, 971 F.3d 485, 496 (5th Cir. 2020)

("[A]rguments not raised before the district court are waived and will not be considered on appeal.").

**B.     An Injunction in *Giroir* Can Provide Class-Wide Relief.**

"The Fifth Circuit has indeed noted that Rule 23(b)(2) does not require that every jot and tittle of injunctive relief be spelled out at the class certification stage; it requires only reasonable detail as to the acts required." *Valentine v. Collier*, No. 20-1115, 2020 WL 3491999, at *14 (S.D. Tex. June 27, 2020) (quoting *Yates v. Collier*, 868 F.3d 354, 368 (5th Cir. 2017) (cleaned up)). The district court did not abuse its discretion in finding such a requirement is satisfied here.

All *Giroir* class members will benefit from an injunction about adequate release practices because all *Giroir* class members—by definition—have been overdetained due to Defendant's failure to "implement and maintain" adequate release practices. Pet. Appx. 115.

**C.     The District Court did not Err in Finding *Humphrey* Satisfies Predominance and Superiority.**

In disputing *Humphrey's* predominance and superiority, Defendants repeat most of their arguments regarding commonality and typicality while adding concerns about the difficulty in calculating damages for each class member. *See* Petitioner's Brief at 27.

21

The district court largely mooted Defendant's damages argument when they granted class certification as Plaintiffs requested "with the limited exception of damages involving emotional distress." Pet. Appx. 106. The district court also noted that other courts "uniformly" hold that differences in "the amount of damages incurred [among class members] does not mean that a class action would be inappropriate," and that severing damages from liability is in fact favorable to Rule 23 and judicial economy by allowing for liability–*prior to damages*–to be "tried only once, rather than for each class member." Pet. Appx. 105. (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1781 (4th ed. 2023)). Relevant to this case, the district court did find that "'virtually every issue *prior to damages'* will be decided on a class-wide basis." Pet. Appx. 106 (citing *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 739 (5th Cir. 2023) (emphasis added)).

The district court also reasonably concluded that predominance and superiority were satisfied. Pet. Appx. 104 (questions like "(1) whether the . . . portal resolved the DOC's overdetention crisis; (2) whether the DOC could have [acted] sooner; and (3) whether, and the extent to which, the DOC could have required or otherwise encouraged [transmission of]

22

documents faster" addressed the "key" issue of LeBlanc's constitutional violations and deliberate indifference); Pet. Appx. 104–05 ("There are thousands of overdetentions and only a handful of claims. . . these overdetention cases strike the Court as negative value suits, as the cost of bringing the action . . . outweigh any individual recovery.").

### D. Plaintiffs Presented Sufficient Evidence of Commonality and Typicality Within the Classes.

As is needed to satisfy commonality, all class members' claims "depend upon [the] common contention" of having been overdetained due to Defendant's failure to implement and maintain an adequate process for their timely release. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The district court found that while there may be "variations in individual circumstances" for members of each class, such variations are overshadowed by the "central issue" of deliberate indifference regarding Defendant's failure to implement processes for timely release of Plaintiffs from DOC custody. Pet. Appx. 85–86.

As with commonality, the district court found typicality arose out of LeBlanc's policies and LeBlanc's deliberate indifference, and that "individual factual differences" were overshadowed by how much LeBlanc's conduct "pervade[d]" Plaintiffs' claims. Pet. Appx. 86.

## CONCLUSION

For the above-mentioned reasons, the Court should deny Defendants' petition for permissive review.


Dated: October 16, 2025.                    Respectfully submitted,


/S/ *WILLIAM MOST*
**MOST & ASSOCIATES**
201 St. Charles Ave. Ste. 2500
#9685
New Orleans, LA 70170
Tel:  (504) 509-5023
*williammost@gmail.com*

*ATTORNEY FOR PLAINTIFFS-RESPONDENTS AND THE PROPOSED CLASSES*

## CERTIFICATE OF SERVICE

I, William Most, a member of the Bar of this Court and counsel for appellee certify that, on October 16, 2025, a copy of Plaintiffs' Response in Opposition to Defendant's Petition for Permission to Appeal was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ *William Most*
WILLIAM MOST

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this petition complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because it contains 5,009 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

/S/ *William Most*
WILLIAM MOST

Dated: October 16, 2025.